SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR–13–735

| | |
|---|---|
| | **Opinion Delivered** March 19, 2014 |
| CORIE RODRIGUS FRAZIER<br>APPELLANT | APPEAL FROM THE UNION<br>COUNTY CIRCUIT COURT<br>[NO. CR–2012-371-1] |
| V. | |
| | HONORABLE HAMILTON H.<br>SINGLETON, JUDGE |
| STATE OF ARKANSAS<br>APPELLEE | AFFIRMED |

---

## BRANDON J. HARRISON, Judge

Corie Frazier appeals his conviction for aggravated assault and argues that the court erred in denying his motion for directed verdict on that charge. We find no error and affirm.

In a criminal information filed in August 2012, Frazier was charged with first-degree attempted murder, committing a terroristic act, three counts of aggravated assault, and possession of a firearm by certain persons. At a jury trial held in April 2013, the State introduced evidence that, on 19 July 2012, Frazier and his friend Mark Watts were involved in an argument over money owed to Frazier by Watts. This disagreement resulted in Frazier shooting Watts five times using a handgun. Frazier's sole challenge on appeal relates to his conviction for the aggravated assault of Sharon Watts, Mark Watts's wife, so only testimony pertinent to that point on appeal is discussed below.

Sharon Watts testified that, on 19 July 2012, she was employed as a live-in CNA, and she and her husband, Mark, were living in Mildred Gillespie's home. Sharon testified that she

had known Frazier for several years because he and her husband were friends. She explained that on June 19, Frazier came to Ms. Gillespie's home several times. The first time, she explained, he and her husband had a verbal argument, and when it started getting loud, she intervened and said, "y'all going to have to leave." She understood that the argument was about money, that her husband owed Frazier money, and she felt it was "strongly drug related." She stated that before Frazier left, he said that he was going to come back and "shoot up the place" and that he was "going to be on the front page for mercing your bitch ass."[1]

According to Sharon, Frazier came back to the house approximately thirty minutes later. She went outside to speak to Frazier and again asked him to leave. Frazier told her that it was not about the money, it was "about the principles," and that her husband was disrespectful. Mark then came out of the house and approached Frazier's vehicle, and Sharon observed Frazier reach under his seat and retrieve a gun. She yelled at Mark to run, and Frazier got out of his vehicle and ran behind Mark. Shots were fired, and Sharon saw Mark fall. Frazier then left the front yard, but as Mark attempted to get up and enter the house, Frazier returned and shot at Mark again. As Frazier left the yard a second time, Sharon explained: "I thought he was going to shoot me but he didn't. I said, 'Please, Corie, don't shoot me.' . . . He just took off running." Sharon stated that she did not see her husband in possession of any type of weapon.

---

[1]"Merc" or "merk" is slang for murder.

Mark Watts testified that he and Frazier had been best friends since the sixth grade. He acknowledged that Frazier had "fronted" him about $3800 worth of drugs because he and his family were in a "financial bind." Mark testified that he sold the drugs and gave Frazier half the money, and that he thought they "had an understanding of how I was going to give him the other half. That was a big misunderstanding." On the day of the shooting, Frazier told Mark that he needed the money, and Mark told him (Frazier) that he did not have it. He stated that he had never seen Frazier as angry as he was that day. Frazier became "loud and rugged" and, while they were arguing, Frazier hit him. Sharon then came out of the house, and according to Mark, "[t]hat's when he [Frazier] got to talking about, 'your husband fixing to lose his life.'" Mark also testified that Frazier said he would be "on the front page for mercing my friend."

Mark explained that after Frazier left, he called Frazier because he wanted them to "sit down and talk about this and see if we can figure it out." Frazier told him that he would come back to the house. About twenty minutes later, Maria Washington, a friend of Sharon's who was visiting at the time, told him that Frazier was outside. Mark went outside and heard his wife pleading with Frazier, and after a few words between himself and Frazier, Mark heard his wife say "run, baby, he got a gun." Mark saw Frazier come around his vehicle holding the gun down at his side. Mark tried to evade Frazier, but they ran into each other and Frazier shot him. Mark testified that after several shots, Frazier walked away, but then returned and "pointed the gun directly at my temple and pulled the trigger and the gun jammed." Mark testified that he did not have a gun at any time during the confrontation.

At the close of the State's evidence, Frazier made a directed-verdict motion on all counts. Specifically, with regard to the assault on Sharon Watts, Frazier argued that there was no evidence that shots were fired at Sharon and that the shell casings indicated that all shots were fired toward Mark. Frazier argued that Sharon fled the area and that "she was not in substantial risk of death or serious physical injury as those shots were contained to a defined area." The State responded by arguing that

> Ms. Watts was in the yard and was a direct subject of the Defendant coming out of the motor vehicle holding a handgun clearly described. . . . [H]e created a substantial risk of serious physical injury or death to everyone involved at the crime scene at that point. He was approaching Sharon Watts and Mark Watts who were standing side by side by the motor vehicle. You don't have to shoot at her to satisfy the requirements and elements of this crime.

The court denied Frazier's motion for directed verdict on this count, although it granted a directed verdict in Frazier's favor on other counts.

Frazier testified. He explained that he had agreed to help Mark by "fronting" him some cocaine to sell. After several failed attempts to get paid, Frazier thought he was going to get some money from Mark on June 19, but when Frazier arrived at Ms. Gillespie's house, Mark told him (Frazier) that he did not have the money. Frazier admitted that he was irritated and that he slapped Mark. He also admitted that he was carrying a gun at that time and that it was tucked into his waist. But he explained that when he left the house the first time, he was not thinking that he would shoot Mark. He denied stating that he was going to "merk" anyone. According to Frazier, he wanted nothing else to do with Mark. But, after Mark called him, he agreed to go back to the house and talk.

4

Frazier said that when he returned to the house, he got out of his vehicle and talked to Sharon. Frazier testified that Mark appeared on the porch, and the two men began to approach each other. Frazier said that he saw a gun in Mark's hand as he came down the steps from the porch. At that time, Frazier made a motion of going for his gun. After moving around a parked Escalade "for defensive purposes," Frazier observed Mark "on the ground pulling his hand out from under the Escalade. That's when I just started shooting." According to Frazier, Mark had dropped his gun and was attempting to retrieve it, so Frazier shot him. Frazier testified that, to his knowledge, Sharon was still behind him and Mark, and he didn't see her again until he was leaving. He denied aiming his gun at her or saying anything to her. He testified that she was "well out of the way" and denied that she said "please don't shoot me."

After the close of the evidence, Frazier renewed his motions for directed verdict, which were denied. The jury found Frazier guilty of first-degree attempted murder, aggravated assault, and possession of a firearm, and he was sentenced to terms of thirty years', six years', and twenty years' imprisonment, to run consecutively. This appeal followed.

In reviewing a challenge to the sufficiency of the evidence, this court views the evidence in the light most favorable to the State and considers only the evidence that supports the verdict. *Richey v. State*, 2013 Ark. App. 382. This court will affirm a conviction when there is substantial evidence to support it, and substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion without resorting to speculation or conjecture. *Id.* Moreover, the jury is responsible for determining

the weight and credibility of evidence. *Id.*

A person commits aggravated assault if, under circumstances manifesting extreme indifference to the value of human life, he or she purposely engages in conduct that creates a substantial danger of death or serious physical injury to another person. Ark. Code Ann. § 5-13-204(a)(1) (Supp. 2011). Frazier argues that based on the facts developed at trial, and even viewing the evidence in the light most favorable to the State, there was insufficient evidence to support his conviction for aggravated assault. He says that he exited his Mercedes with the gun pointed at the ground, chased Mark, and aimed at Mark while shooting. Sharon Watts, meanwhile, remained in the front yard and out of the line of fire. Frazier believes that a substantial risk of death or serious physical injury to Sharon Watts was never present in these circumstances.

According to the State, Frazier threatened both Sharon and Mark when he said he was going to "shoot up the place" and also threatened to murder Mark. And Frazier did shoot Mark multiple times before turning toward Sharon while leaving, prompting her to beg him not to shoot her. The State contends that this evidence demonstrates that Frazier purposefully engaged in conduct that created a substantial danger of death or serious injury to Sharon Watts.

Frazier admits to shooting his gun multiple times in the direct vicinity of both Sharon and Mark Watts; that only Mark Watts was injured does not negate the danger of death or physical injury that Sharon was exposed to as well. Viewing the evidence in the light most favorable to the State, and taking into account the jury's assessment of the credibility of the

6

evidence, we hold that substantial evidence supports Frazier's conviction for aggravated assault.

Affirmed.

WHITEAKER and WOOD, JJ., agree.


*Latonya Laird Austin*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellee.